UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CANON USA, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-1201** |
| **S.A.M., INC.** | **SECTION "S" (4)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that plaintiff's motion to dismiss the first, second, fourth, and fifth counterclaims is **GRANTED**. Plaintiff's motion to dismiss the third counterclaim is **DENIED.**

## BACKGROUND

Plaintiff, Canon USA, Inc., filed suit against S.A.M., Inc., a dealer of Canon products, alleging claims for breach of the Canon Consumer Digital Camera Products Dealer Agreement ("Dealer Agreement"), breach of the Security Agreement executed by SAM, and failure to make payment on an account. Canon alleges that it entered into a Dealer Agreement and a Security Agreement, allowing SAM to distribute Canon products to the public. Under the Dealer Agreement, SAM agreed to purchase and maintain inventory of Canon digital camera products. SAM was required to pay Canon within 90 days of the date of each invoice.

In November 2005, SAM's retail store located in New Orleans was destroyed by a fire, resulting in the destruction of its Canon inventory. Canon alleges that at the time of the fire, SAM owed it approximately $521,010.93 for the inventory, and that in January 2006, SAM paid $40,918.82 to Canon, leaving an outstanding balance of $475,821.61.

SAM filed an answer denying Canon's allegations and a counterclaim, alleging that Canon breached provisions of the Dealer Agreement and the Security Agreement. Canon filed a motion to dismiss SAM's counterclaims, arguing that SAM has failed to state a claim upon which relief can be granted.

## DISCUSSION

**A)      Standard of Review**

"To survive a motion a Rule 12(b)(6) motion to dismiss, the plaintiff must prove enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litigation,* 495 F. 3d 191,205 (5th Cir. 2007)(citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citing *Bell Atlantic Corp.,* 127 S.Ct. at 1965).

Conclusory allegations or legal conclusions, however, will not suffice to defeat a motion to dismiss. *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993). In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider the facts presented in exhibits attached to the complaint. Fed. R. Civ. Proc. 10(c).

**B)      SAM's Counterclaims**

Canon argues that the counterclaims asserted by SAM must be dismissed because the provisions of the agreements SAM alleges were breached do not impose obligations on Canon.

*1)      First Counterclaim*

SAM's first counterclaim alleges that Canon breached paragraph 1 of the Dealer Agreement because it charged SAM amounts in excess of its price list. Canon argues that this counterclaim

must be dismissed because paragraph 1 does not require Canon to charge its customers based on the price list but only identifies a list of digital camera products that Canon agreed to sell to SAM.

SAM contends that paragraph 1 requires SAM to buy Canon products under Canon's terms and conditions, but that Canon could only charge SAM the prices specified on the price list.  Further, SAM argues that the Dealer Agreement contained a price protection plan which provided that SAM would receive a refund of excess amounts paid for the Canon products if Canon reduced its prices.

Paragraph One of the Dealer Agreement states:

> Canon USA agrees to sell CANON Consumer Digital Camera Products to Dealer and Dealer agrees to purchase them from Canon USA for sale at retail.  "CANON Consumer Digital Camera Products: shall consist of certain digital camera products and the dedicated accessories, therefore available from time to time as described in the Canon USA confidential dealer's Digital Camera price list then in effect (the "Price List."). Dealer shall purchase the CANON Consumer Digital Camera Products from Canon USA in accordance with Canon USA's terms and conditions of same, as in effect from time to time.

The Dealer Agreement clearly provides that it is to be governed by and construed in accordance with the laws of the State of New York.  Under New York law, "[t]he objective of contract interpretation is "to determine 'what is the intention of the parties as derived from the language employed'" *Lopez v. Fernandito's Antique, Ltd.*, 760 N.Y.S.2d 140, 141 (2003)(citing *Hartford Accident & Indemnity Co. v. Wesolowski,* 33 N.Y.2d 169, 171-172 (1973)).  Clear and unambiguous terms should be understood in their plain, ordinary, popular and non-technical meaning.  *Id*.  Where the language is plain and unambiguous, extrinsic circumstances should not be considered to determine the intention of the parties. *Id.* (citing *Bethlehem Steel Co. v. Turner Constr. Co.*, 161 N.E.2d 456, 459 (1957); *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 430 N.Y.S.2d 179 (1980)).

3

SAM's first counterclaim is specifically limited to Paragraph 1 of the Dealer Agreement. Paragraph 1 directly addresses the obligations of Canon to sell its products to SAM and SAM's obligation to purchase those products. The "Price List" only describes the products to be sold to SAM under the Dealer Agreement and does not include any reference to a price protection plan. Accordingly, dismissal of the first counterclaim is proper.

### *2)    Second Counterclaim*

The second counterclaim alleges that paragraph 2(b) of the Dealer Agreement required SAM to purchase a minimum inventory from Canon in accordance with certain performance standards, and that Canon breached its obligations to SAM by forcing SAM to purchase merchandise, "following Hurricane Katrina and a subsequent fire, when SAM was demonstrably incapable of fulfilling the required performance standards." Canon argues that this counterclaim must be dismissed because paragraph 2(b) does not impose any obligations upon Canon, but simply gave Canon the right to terminate the Dealer Agreement if SAM could not meet its performance standards.

SAM argues in support of its second counterclaim that under the Dealer Agreement, Canon had the obligation to supply SAM with the Canon products it needed to stay in business, but Canon failed to provide it with the most competitive models of the product it needed to continue in business and made it impossible for SAM to be successful.

Paragraph 2(b) states:

> Dealer agrees to purchase from Canon USA at least a minimum periodic unit quantity of CANON Consumer Digital Camera Products, as such minimum periodic unit quantity may be established by Canon USA on a fair and equitable basis from time to time, as Canon USA deems desirable. Such minimum periodic unit quantity shall be described in the performance standards then in effect ("Performance Standards"). If the Dealer fails to purchase the minimum periodic unit quantity, as

> the same may be amended periodically, Canon USA may give Dealer notice of its deficiency and thirty (30) days in which to rectify same. If the deficiency is not cured within such time period, Canon USA may, in its discretion and in addition to all other rights and remedies available to it, cancel this Agreement upon notice; provided, however, that Canon USA shall give such longer notice period with respect to the cure of deficiencies and cancellation where required by applicable law.

SAM's second counterclaim directly addresses paragraph 2(b), which does not impose any obligation on Canon to supply SAM with competitive products. Therefore, dismissal of the second counterclaim is proper.

### 3) *Third Counterclaim*

SAM's third counterclaim is that under paragraph 3 of the Dealer Agreement, Canon was required reasonably to allocate shipments among its dealers, and that Canon breached its obligations because it withheld shipments and unfairly allocated shipments in favor of other dealers. Canon contends that under paragraph 3, it had the right to withhold shipments and reasonably to allocate them to other dealers in its discretion. SAM argues that the issue is whether Canon's allocation was reasonable.

Paragraph 3 states:

> Upon receipt of Dealer's orders, Canon USA shall sell to Dealer the ordered CANON Consumer Digital Camera Products as are then available for sale, provided: (a) Dealer is not in breach of any provision of this Agreement; and (b) Dealer's credit standing in each instance is approved by Canon USA's Credit Department. Each order accepted and shipped by Canon USA shall be artthe prices, terms and discounts, if any, which are in effect for Consumer Digital Camera Products at the time of Canon USA's acceptance of Dealer's order. Canon USA reserves the right reasonably to allocate shipments among its dealers, in its sole discretion, at times when its inventories are insufficient to fill the orders that it has received.

Under the terms of paragraph 3, Canon's allocation of shipments must be reasonable. SAM's allegations that Canon withheld shipments and unfairly allocated shipments in favor of other dealers are sufficient to state a claim to relief that is plausible on its face. Accordingly, dismissal of the

third counterclaim is denied.

### 4)     *Fourth Counterclaim*

SAM's fourth counterclaim is that Canon breached the Security Agreement because it failed to obtain insurance covering SAM's inventory as required under the agreement. Canon contends that it was SAM's obligation to obtain insurance and Canon had the option to purchase it, if SAM did not do so.

Paragraph 2 of the Security Agreement states:

INSURANCE. The purchaser shall have and maintain insurance at all times with respect to all Collateral against risks of fire (including extended coverage), theft, sprinkler leakage, and other risks as Canon may require, with such insurance to be payable to Canon and the purchaser as their interests may appear. All policies of insurance shall provide for a minimum of ten days written notice of cancellation to Canon. At the request of Canon, such policies shall be delivered to and held by Canon. Canon may act as attorney for the Purchaser in obtaining, adjusting, settling and cancelling such insurance and endorsing any drafts. In the event of failure to provide insurance as herein provided, Canon may, at Canon's option, provide such insurance and the Purchaser shall pay to Canon, on demand, the cost thereof.

The clear language of paragraph 2 requires SAM to purchase insurance and allows Canon to do so if SAM failed to, and further provided Canon the right to be reimbursed the cost thereof. However, Canon had no obligation to purchase the insurance. Accordingly, dismissal of the fourth counterclaim is proper.

### 5)     *Fifth Counterclaim*

SAM's fifth counterclaim is that Canon breached all of its obligations under the Dealer Agreement. Canon asserts that dismissal of the fifth counterclaim is required because it is conclusory. SAM has not set forth enough facts to state a claim to relief that is plausible on its face. SAM's fifth counterclaim must be dismissed.

## **CONCLUSION**

Plaintiff's motion to dismiss the first, second, fourth, and fifth counterclaims is **GRANTED**.

Plaintiff's motion to dismiss the third counterclaim is **DENIED**.

New Orleans, Louisiana, this \_\_11th\_\_ day of October, 2007.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**